IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:10-CV-309-D

| | |
|---|---|
| PAMELA FAYE HAIR, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MICHAEL J. ASTRUE, )<br>Commissioner of Social Security, )<br>)<br>Defendant. ) | **MEMORANDUM AND<br>RECOMMENDATION** |

In this action, plaintiff Pamela Faye Hair ("plaintiff") challenges the final decision of defendant Commissioner of Social Security ("Commissioner") denying her application for a period of disability and disability benefits ("DIB") on the grounds that she is not disabled. The case is before the court on the parties' respective motions for judgment on the pleadings. (D.E. 28, 30). Both parties submitted a memorandum in support of their respective motions (D.E. 29, 31). The motions were referred to the undersigned Magistrate Judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (*See* D.E. 32). For the reasons set forth below, it will be recommended that plaintiff's motion be granted, the Commissioner's motion be denied, and this case be remanded for further proceedings.

## I. BACKGROUND

### A. Case History

Plaintiff filed an application for DIB on 14 November 2006 alleging a disability onset date of 19 September 2005. Transcript of Proceedings ("Tr.") 12, 134, 146. She claimed disability due to limited range of motion of her left shoulder, spondylolisthesis in her back, carpal tunnel syndrome in her hands, and a bone cyst in her left ankle. Tr. 138. Her application was denied initially, and

again upon reconsideration, and a request for hearing was timely filed. Tr. 13, 45, 46, 70-72. On 1 July 2009, a hearing was held before an Administrative Law Judge ("ALJ"). Tr. 19-44. The ALJ issued a decision denying plaintiff's claim on 31 August 2009. Tr. 12-18. Plaintiff timely requested review by the Appeals Council. Tr. 8. The Appeals Council denied the request for review on 4 June 2010. Tr. 1. At that time, the decision of the ALJ became the final decision of the Commissioner. 20 C.F.R. § 404.981.

Plaintiff commenced this proceeding for judicial review with the filing of her complaint on 1 September 2010, pursuant to 42 U.S.C. § 405(g), following denial of her motion to proceed *in forma pauperis* on 4 August 2010. (*See* Order (D.E. 3); Compl. (D.E. 8)). The parties subsequently filed their motions for judgment on the pleadings.

### B. Standards for Disability

The Social Security Act ("Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The Act goes on to describe the attributes an impairment must have to be disabling:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.

42 U.S.C. § 423(d)(2)(A).

The Act defines a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The burden of proving disability falls upon the claimant. *English v. Shalala*, 10 F.3d 1080, 1082 (4th Cir. 1993).

The disability regulations under the Act ("Regulations") provide the following five-step analysis that the ALJ must follow when determining whether a claimant is disabled:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in [20 C.F.R. § 404.1509], or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in [20 C.F.R. pt. 404, subpt. P, app. 1] ["listings"] . . . and meets the duration requirement, we will find that you are disabled. . . .
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity ["RFC"] and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .
>
> (v) At the fifth and last step, we consider our assessment of your [RFC] and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. § 404.1520(a)(4).

The burden of proof and production rests with the claimant during the first four steps of the analysis. *Pass*, 65 F.3d at 1203. The burden shifts to the Commissioner at the fifth step to show that alternative work is available for the claimant in the national economy. *Id.*

3

In the case of multiple impairments, the Regulations require that the ALJ "consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 404.1523. If a medically severe combination of impairments is found, the combined impact of those impairments will be considered throughout the disability determination process. *Id.*

C. **Findings of the ALJ**

Plaintiff was 40 years old on the alleged onset date of disability and 43 years old on the date of the administrative hearing. *See* Tr. 17 ¶ 7.[1] She has a high school education. Tr. 17 ¶ 8.

Applying the five-step analysis of 20 C.F.R. § 404.1520(a)(4), the ALJ made the finding at step one that plaintiff had not engaged in substantial gainful activity since 19 September 2005, the alleged onset date. Tr. 14 ¶ 2. At step two, the ALJ found that plaintiff had the following medically determinable impairments which were severe within the meaning of the Regulations, 20 C.F.R. § 404.1520(c): carpal tunnel syndrome in at least the right hand;[2] degenerative disc disease of the back; degenerative joint disease of the ankle; and peripheral neuropathy. Tr. 14 ¶ 3. At step three, however, the ALJ found that plaintiff's impairments did not meet or medically equal any of the listings. Tr. 15 ¶ 4.

The ALJ determined that plaintiff had the RFC to perform sedentary work with some restrictions. Tr. 15 ¶ 5. Specifically, the ALJ restricted plaintiff to: lifting and carrying ten pounds

---

[1] For ease of reference, the court has included in citations to the ALJ's decision the numbered paragraph in which the cited material is located if more than one numbered paragraph appears on the page referenced.

[2] Although the ALJ does not expressly state whether his carpal tunnel finding applies to both hands, it appears clearly to apply to at least her right hand because he restricted that hand to frequent handling and fingering in his RFC determination (Tr. 15 ¶ 5), which is discussed below. Moreover, in his discussion of the RFC, he summarizes medical findings showing the carpal tunnel syndrome to be worse in plaintiff's right hand. Tr. 16. In the remand recommended herein, the ALJ should specify which hands are subject to any finding of carpal tunnel syndrome he makes.

4

occasionally and five pounds frequently; standing and walking with normal breaks for a total of six hours in an eight-hour day; sitting with normal breaks for a total of six hours in an eight-hour day; occasional pushing and pulling of hand controls with the non-dominant (*i.e.*, left)[3] upper extremity; frequent handling and fingering with the dominant (*i.e.*, right) upper extremity; avoiding concentrated exposure to hazards; and no overhead reaching and handling with the nondominant upper extremity (as defined in 20 C.F.R. § 404.1567(b)).[4]  Tr. 15 ¶ 5.  Based on this RFC, the ALJ found at step four that plaintiff could not have performed any past relevant work.  Tr. 17 ¶ 6.

At step five, the ALJ found that there were jobs in significant numbers in the national economy that plaintiff could perform, including order clerk, callout operator, and parking lot attendant.  Tr. 18 ¶ 10.  In making this determination, the ALJ adopted the opinion of a vocational expert who testified at the hearing.  *Id.*  The ALJ accordingly found plaintiff not disabled during the relevant period.  Tr. 18 ¶ 11.

## II.  DISCUSSION

### A.  Standard of Review

Under 42 U.S.C. § 405(g), judicial review of the final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by substantial evidence in the record and whether the appropriate legal standards were applied.  *See Richardson v. Perales*, 402

---

[3] Although the ALJ did not expressly find that plaintiff is right-handed, she testified that she is (Tr. 28).  In addition, the restrictions he placed on her "non-dominant" upper extremity in his RFC determination (*e.g.*, no overhead reaching and handling) are consistent with that extremity being her left arm, the one with the shoulder impairment.  Tr. 15 ¶ 5.  Her "dominant" upper extremity would therefore be her right arm, making her right-handed.  In the remand recommended herein, the ALJ should make an explicit finding on which of plaintiff's upper extremities is dominant.

[4] The reference to 20 C.F.R. § 404.1567(b) in the RFC determination appears to have been made in error.  That provision sets out the exertional requirements for light work and does not appear to have any bearing on the RFC determination.

5

U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Unless the court finds that the Commissioner's decision is not supported by substantial evidence or that the wrong legal standard was applied, the Commissioner's decision must be upheld. *See, e.g.*, *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla of evidence, but somewhat less than a preponderance. *Perales*, 402 U.S. at 401.

The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (*per curiam*). In addition, the court may not make findings of fact, revisit inconsistent evidence, or make determinations of credibility. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979). A Commissioner's decision based on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion. *Blalock*, 483 F.2d at 775.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

6

B.   **Overview of Plaintiff's Contentions**

Plaintiff contends that the ALJ's decision should be reversed because the ALJ erred by failing: (1) to consider or discuss the effect of plaintiff's impairments in combination and (2) to consider the award of a disability retirement pension to plaintiff by her previous employer. The court will address each of these contentions in turn below.

C.   **Consideration and Discussion of Impairments in Combination**

Plaintiff argues that the ALJ erred by not considering and discussing plaintiff's impairments in combination throughout his analysis. Plaintiff's contention has merit.

The ALJ's error relates most dramatically to his handling of plaintiff's impairment of her left[5] shoulder. The impairment arose from a job-related injury plaintiff sustained to her left shoulder in 2005. Tr. 14 ¶ 3. She received years of treatment for the impairment, including two surgeries. Tr., *e.g.*, 202-78, 287-345, 354-430. Records relating primarily or exclusively to the diagnosis of and treatment for the shoulder impairment comprise almost all the medical evidence of record (the biggest exception being six pages of records relating to her carpal tunnel syndrome (Tr. 438-443)). At the hearing, plaintiff testified to the limitations she claims she continues to suffer from her shoulder impairment. Tr., *e.g.*, 26-30, 34, 39. In his RFC determination at step four, the ALJ himself imposed restrictions directly responsive to plaintiff's shoulder impairment: "occasional pushing and pulling of hand controls with non-dominant [*i.e.*, left] upper extremity" and "no overhead reaching and handling with non-dominant upper extremity." Tr. 15 ¶ 5. His restriction of plaintiff to the

---

[5] The hearing transcript states at one point that plaintiff identified her right shoulder as the one subject to her claim. Tr. 26. That statement, as transcribed, is clearly incorrect. At other places in her testimony, plaintiff refers to her left shoulder as the one at issue. Tr., *e.g.*, 29, 30, 34, 29. The medical evidence all addresses her left shoulder and the ALJ's findings relate to her left shoulder. Tr., *e.g.*, 14-15 ¶ 3, 202, 272, 331.

7

sedentary exertional level limits of carrying ten pounds occasionally and five pounds frequently also appears to relate to the shoulder impairment. Tr. 15 ¶ 5.

Notwithstanding the centrality of plaintiff's shoulder impairment to her claim and the ALJ's RFC assessment, he did not find at step two that it was a severe impairment. As noted, he found plaintiff to have only the severe impairments of carpal tunnel syndrome, degenerative disc disease of the back, degenerative joint disease of the ankle, and peripheral neuropathy. Tr. 14 ¶ 3.

He made no finding of severity regarding the shoulder even though "the severity standard is a slight one in this Circuit." *Stemple v. Astrue*, 475 F. Supp. 2d 527, 536-37 (D. Md. 2007). While the Regulations provide that an impairment is severe if it "significantly limits . . . [a claimant's] physical or mental ability to do basic work activities," 20 C.F.R. § 404.1520(c), the Fourth Circuit has clarified that "an impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir. 1984) (internal quotation marks omitted).

The ALJ nowhere explains why he did not find plaintiff's shoulder impairment to be severe. The omission of an explanation is not rooted in failure by the ALJ to consider the shoulder impairment at step two. In the discussion following the finding, he summarizes the evidence of record relating to the shoulder impairment.

The ALJ's failure to provide an explanation of his handling of the shoulder impairment at step two was error. In the absence of it, plaintiff and the court are left to wonder why the ALJ did not find the shoulder impairment to be severe. The reasons are not otherwise apparent given the

8

medical and other evidence tending to show that it is severe and the ALJ's RFC determination imposing restrictions relating to the shoulder impairment.[6]

It is conceivable that the ALJ inadvertently excluded plaintiff's shoulder impairment from the listing of impairments he found to be severe, although his failure to consider it at step two casts doubt on this possibility. In any event, it is not the court's role to speculate as to findings the ALJ could have made or to make findings for the ALJ. *See Craig*, 76 F.3d at 589.

Nor can it be said that the assessment of a claimant's RFC is a substitute for the step-two severity analysis. The RFC assessment is used to help determine what a claimant is able to do. *See* 20 C.F.R. § 404.1545. The step-two analysis considers the limiting effect of the claimant's impairments with the objective medical and other evidence to determine whether the impairments are severe, alone or in combination with other impairments. *See* 20 C.F.R. § 404.1523. If found to be severe, the impact of an impairment, or combination of impairments, on a claimant's ability to do basic work activities is also to be considered at each subsequent step of the sequential analysis. *Id.* Given the different nature of the step-two severity analysis and the RFC assessment, they are subject to different standards and requirements. *See, e.g.*, 20 C.F.R. §§ 404.1520(a)(4)(ii) (step-two severity), 404.1521 (same); Soc. Sec. R. 96-3p, 1996 WL 374181 (1996) (step-two severity); 20 C.F.R. § 404.1545 (RFC).

The ALJ also failed to adequately address plaintiff's shoulder impairment at step three of the sequential analysis. As noted, he found that plaintiff does not have an impairment or combination

---

[6] The court is not implying that there necessarily is a valid reason for not finding plaintiff's shoulder impairment to be severe. The court need not resolve that question at this time given the recommended remand.

9

of impairments that meets or medically equals a listing. Tr. 15 ¶ 4. He makes no specific reference to the shoulder impairment in this finding.

Nor does he expressly address the shoulder impairment in his explanation of the finding. The explanation reads:

> The claimant's carpal tunnel syndrome, degenerative disc disease and degenerative joint disease do not meet the relevant criteria for Medical Listings 1.02A and 1.04. The claimant's condition is not manifested in any other clinical findings indicating a level of severity compared to the criteria of those Listings, and therefore, her condition cannot be found medically equal to the Listings.

Tr. 15 ¶ 4.

Thus, the only impairments the ALJ specifically indicates he considered at step three are plaintiff's "carpal tunnel syndrome, degenerative disc disease, and degenerative joint disease." Tr. 15 ¶ 4. Because this list corresponds to the list of the first three impairments found to be severe at step two (*i.e.*, they are in the same order, the same basic terminology is used), the term "degenerative joint disease" appears to refer solely to plaintiff's degenerative joint disease of the ankle and thereby not to include the shoulder impairment.[7]

The ALJ does not otherwise appear to have considered plaintiff's shoulder impairment in his step three analysis. Such an inference arises from the apparent limitation of his consideration of Listing 1.02 to part A, which he mentions, to the exclusion of part B, which he does not mention. Listing 1.02A requires "[i]nvolvement of one major peripheral weight-bearing joint (*i.e.*, hip, knee, or *ankle*), resulting in inability to ambulate effectively, as defined in 1.00B2b." Listing 1.02A

---

[7] Although the ALJ does not expressly limit the "degenerative joint disease" to plaintiff's ankle, he did not limit her degenerative disc disease to her back, as he did in the step two finding. The list at step three therefore appears something of a shorthand version of the list at step two.

(emphasis added). The ALJ therefore appears to have considered Listing 1.02A in connection with plaintiff's ankle impairment.

Listing 1.02B requires "[i]nvolvement of one major peripheral joint in each upper extremity (i.e., *shoulder*, elbow, or *wrist-hand*), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c." Listing 1.02B (emphasis added). Plaintiff has impairments in a major peripheral joint in each upper extremity: carpal tunnel syndrome[8] in her right hand and the shoulder impairment in her left arm. The ALJ expressly refers to plaintiff's carpal tunnel syndrome in his step three analysis. The impairment he omitted was therefore the left shoulder impairment.

It was error for plaintiff not to consider plaintiff's shoulder impairment at step three. His consequent failure to consider Listing 1.02B was also error.

As with the step-two analysis, the RFC assessment can not be considered a substitute for the step-three analysis. Indeed, the analysis at step three is even less closely related to the RFC analysis than the analysis at step two. A determination that a claimant's impairments meet or medically equal a listed impairment would itself result in a finding of disability. 20 C.F.R. § 404.1520(d). There is no counterpart to this aspect of the analysis at step three in an RFC assessment.

Moreover, the court cannot endorse the principle that one or more steps in the sequential analysis may simply be skipped if a purportedly similar evaluation is performed later. Such an approach subverts the integrity of the basic framework of the five-step sequential analysis. *See, e.g., Parris v. Barnhart*, No. 03C251, 2004 WL 3008744, at *13 n.2 (N.D. Ill. 28 Dec. 2004) (holding

---

[8] Carpal tunnel syndrome is an impairment within the scope of Listing 1.02B. *See Hanlon v. Commissioner of Social Security*, No. 5:07-CV-747, 2010 WL 5285311, at *3 (N.D. N.Y. 17 Dec. 2010) (noting ALJ's consideration of claimant's carpal tunnel syndrome under Listing 1.02B); *Hudson v. Astrue*, No. 08 C 3242, 2009 WL 2612528, at * 8 (N.D. Ill. 24 Aug. 2009) (same); *Yzaguirre v. Astrue*, Civ. No. 07-6307-AC, 2009 WL 136018, at *4 (D. Or. 20 Jan. 2009) (same).

11

that "[i]n making his determination, the ALJ improperly skipped step three of the analysis. . . . The ALJ is required to perform the five-step evaluation *in sequence* and is not allowed to skip step three.").

The impropriety of the ALJ's analysis of plaintiff's impairments at steps two and three necessarily invalidates the ALJ's RFC determination. It, of course, is made between steps three and four, and is based in part on the preceding steps. *See* 20 C.F.R. §§ 404.1520(a)(4), 404.1545 (explanation of RFC).

For the foregoing reasons, it will be recommended that this case be remanded for reconsideration of plaintiff's left shoulder impairment in accordance with step two and every other applicable step of the sequential analysis. This impairment should be considered alone and in combination with plaintiff's other impairments, as the Regulations and case law require. *See* 20 C.F.R. § 404.1523; *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (holding that the combined effect of impairments must be considered). The remand should include reconsideration of the RFC. The ALJ should set out his findings regarding plaintiff's left shoulder impairment and her other impairments, both individually and in combination, to the extent necessary to permit meaningful review of his decision and as otherwise required by the Regulations.

Plaintiff points to her alleged headache condition as another impairment the ALJ failed to consider as required throughout the sequential analysis. She has been diagnosed with and treated for headaches (*see* Tr. 255, 317, 330, 438-40, 443) and testified about them at the hearing (Tr. 35-37). Although the ALJ notes the diagnosis in his decision (Tr. 15 ¶ 3), he does not otherwise expressly address plaintiff's headaches. In the remand, the ALJ should address his handling of plaintiff's headaches at each applicable step of the sequential analysis. Such discussion in the

12

remand decision is appropriate, whether or not it was necessary with respect to the decision under review, because the case is being recommended for remand anyway and such discussion could help ensure that the ALJ's remand decision is understood and possibly eliminate the question of his consideration of the headache condition as an issue in the case.

### D. Consideration of Retirement Benefits

Evidence of record indicates that plaintiff received a disability retirement pension from her former employer, Goodyear Tire and Rubber Company ("Goodyear"). The evidence consists of two letters from Goodyear and a reference by plaintiff to it in her hearing testimony.[9] *See* tr. 24, 132, 133. The ALJ does not refer to this pension in his decision and there is no indication that he considered it. Plaintiff contends that the ALJ erred in not doing so. Given the recommended remand, the court need not resolve this issue. The court nevertheless reviews several principles for guidance.

Under 20 C.F.R. § 404.1504, a decision by any governmental or nongovernmental agency about whether a claimant is disabled is not binding on the Social Security Administration. But Social Security Ruling 06-03p[10] requires that "evidence of a disability decision by another governmental or nongovernmental agency cannot be ignored and must be considered." Soc. Sec. Ruling 06-03p, 2006 WL 2329939, at *6 (9 Aug. 2006). The ruling explains that "[t]hese decisions, and the evidence used to make these decisions, may provide insight into the individual's mental and

---

[9] In her testimony, plaintiff refers to her former employer as "Kelly," rather than Goodyear. Tr. 24. She apparently worked at Goodyear's Kelly-Springfield tire plant in Fayetteville, North Carolina. *Kelly-Springfield Announces $30 Million for Warehouse Expansion and New Equipment for Fayetteville Plant* (15 Sept. 2004), http://www.fayettevillenc.net/news_detail.php?RecID=13 (last visited on 16 June 2011).

[10] Rulings are interpretations of the Act by the Social Security Administration that, while lacking the force of law, are entitled to deference unless they are clearly erroneous or inconsistent with the law. *Pass*, 65 F.3d at 1204 n.3 (citing *Quang Van Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir.1989)).

13

physical impairment(s) and show the degree of disability determined by these agencies based on their rules." *Id.* at *7. When determinations by governmental and nongovernmental agencies provide no meaningful information regarding the claimant's disability, they are not disability decisions within the scope of Social Security Ruling 06-03p and the ALJ need not consider them. *See, e.g.*, *Wright v. Astrue*, No. 5:09-CV-546, 2010 WL 5055899, at *3-4 (E.D.N.C. 6 Dec. 2010) (adopting Mem. & Rec., 2010 WL 5056020, at *4-5 (E.D.N.C. 16 Sept. 2010)); *Moore v. Astrue*, No. 7:10-CV-11, 2010 WL 5477714, at *7 (E.D.N.C. 28 Oct. 2010) (Mem. & Rec. adopted by Order entered 30 Dec. 2010 (D.E. 33)).

In the remand, the ALJ should explain the treatment he accords the evidence of plaintiff's retirement benefits. The absence of any discussion of the evidence in the decision under review suggests that the ALJ did not believe it to merit consideration. If that continues to be the case, the ALJ should so state and provide the reasons in his decision on remand. On the other hand, if he finds that the evidence does merit consideration, he should explain the weight he accords it and provide the reasons. The court recognizes that an ALJ would not ordinarily have to explain a determination not to consider this evidence. Provision of an explanation is warranted here (if the ALJ determines no consideration is warranted) because the case is recommended for remand anyway, the explanation would provide plaintiff a better understanding of an issue she has raised, and the explanation could eliminate further appellate proceedings on the issue.

For similar reasons, the ALJ should also explain the treatment he accords the other evidence of record possibly subject to Social Security Ruling 06-03p—namely, evidence relating to a workers' compensation decision in favor of plaintiff rendered on 14 August 2007 on her claim for occupational disease in her left shoulder. Tr. 181. The decision is referenced in a settlement

14

agreement on the claim entered into by plaintiff with Goodyear and its workers' compensation carrier, although the decision itself is not in the record. Tr. 181-96.

### III. CONCLUSION

For the foregoing reasons, IT IS RECOMMENDED that the Commissioner's motion for judgment on the pleadings be DENIED, plaintiff's motion for judgment on the pleadings be ALLOWED, and this case be REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum and Recommendation.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have 14 days to file written objections. Failure to file timely written objections bars an aggrieved party from receiving a de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge.

This, the 16th day of June 2011.

_____
James E. Gates
United States Magistrate Judge